403 So.2d 1342 (1981)
The MIAMI HERALD PUBLISHING COMPANY, a Division of Knight-Ridder Newspapers, Inc., and Robert Rivas, Petitioners,
v.
The Honorable Bill G. CHAPPELL and Edward Diaz, Respondents.
No. 81-613.
District Court of Appeal of Florida, Third District.
September 3, 1981.
Rehearing Denied October 16, 1981.
Paul & Thomson and Sanford L. Bohrer and Franklin G. Burt and Richard J. Ovelmen, James D. Spaniolo, Miami, for petitioners.
Jim Smith, Atty. Gen. and Anthony C. Musto, Asst. Atty. Gen., Tallahassee, Gerald R. Herms, Tampa, for respondents.
Before HUBBART, C.J., and BASKIN and FERGUSON, JJ.
BASKIN, Judge.
In a petition for appellate review brought pursuant to Florida Rule of Appellate Procedure 9.100(d),[1] the Miami Herald asks us *1343 to rule that the trial court erred when it closed the courtroom and then denied the press and public access to tapes of testimony presented during a criminal pretrial competency hearing conducted by the court. We agree that the trial court committed error when it decided that the classification of doctors' reports as confidential contained in section 394.459(9), Florida Statutes (1979), the "Florida Mental Health Act", also known as the "Baker Act", applies in criminal proceedings to review a defendant's ability to stand trial. Holding that a criminal defendant involved in a pretrial competency hearing is not a "patient" entitled to the confidentiality provisions of chapter 394, we reverse the Order of Closure entered by the trial court.
When Herald reporter Robert Rivas was excluded from the courtroom, he objected to the closure of defendant Diaz's pretrial competency proceedings. He complained that the trial court had failed to notify the press that it intended to close the hearing; the court, upon agreement of the defendant and of the state, had excluded the press and public from the courtroom. The court's action prevented appellants from listening to and reporting counsel's interrogation of court-appointed doctors[2] who presented medical testimony to aid the court in deciding whether defendant Diaz was competent to assist his counsel at trial. His sanity at the time of the offense was not in issue. The purpose of the doctors' testimony was to explain conclusions contained in their written reports to the court. The court maintained that medical reports and related testimony were confidential under section 394.459(9), Florida Statutes (1979).
Petitioners contend that criminal proceedings involving a defendant's ability to stand trial are not governed by the confidentiality provisions afforded hospitalized patients by the Baker Act. The State counters that as a result of the hearing the court ruled that defendant Diaz was incompetent to stand trial and committed him to a state hospital until he regained his competence. Thus, respondent argues, defendant is a patient entitled to the confidentiality afforded every other patient.
Florida Rule of Appellate Procedure 9.100(d) permits this court to review orders which exclude the press or the public from access to proceedings or records which are not required by law to be confidential. Committee notes indicate that the rule establishes a new and independent means of review in the district courts. We accept jurisdiction of this appeal because we find no imposition of confidentiality under the law.
Should pretrial competency hearings be closed? We believe not. Criminal competency proceedings are governed by Florida Rules of Criminal Procedure 3.210-3.214. Under Rule 3.211, a defendant is incompetent to stand trial if he does not have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding or if he has no rational as well as factual understanding of the proceedings against him." The rules of criminal procedure contain no provision for closing a competency hearing. Section 394, the Florida Mental Health Act or Baker Act, generally applies to civil competency proceedings. "Mentally Deficient and Mentally Ill Defendants", under section 916.18, Florida Statutes (Supp. 1980) involuntarily hospitalized under the rules of criminal procedure, are furnished the protections contained in Part I of chapter 394.
Section 394.459, Florida Statutes (1979) provides:
(9) CLINICAL RECORD; CONFIDENTIALITY.  A clinical record for each patient shall be maintained. The record shall include data pertaining to admission and such other information as may be required under rules of the department. Unless waived by express and informed consent by the patient or his *1344 guardian or attorney, the privileged and confidential status of the clinical record shall not be lost by either authorized or unauthorized disclosure to any person, organization, or agency. The clinical record shall not be a public record and no part of it shall be released, except:
(a) The record may be released to mental health professionals, attorneys, and government agencies as designated by the patient, his guardian, or his attorney. A medical discharge summary of the clinical record of any patient committed to, or to be returned to, the Department of Corrections from the Department of Health and Rehabilitative Services shall be released to the Department of Corrections without charge upon its request. The Department of Corrections shall treat such information as confidential and shall not release such information except as provided in this section.
The cited statute affords involuntarily hospitalized patients the protection of confidentiality. "Patient" is defined as "any mentally ill person who seeks hospitalization under this part, or any person for whom such hospitalization is sought." § 394.455(13), Fla. Stat. (1979). Clinical records include "all parts of the record required to be maintained and includes all medical records, progress notes, charts, admission and discharge data, and all other information recorded by a facility which pertains to the patient's hospitalization and treatment." § 394.455(21), Fla. Stat. (1979).
Although section 394.459 declares as state policy that "the individual dignity of the patient shall be respected ... including any occasion when the patient is taken into custody, detained, or transported... .", it too contains no provision for courtroom closure in criminal proceedings. In our opinion, a defendant in a criminal competency proceeding is not a "patient" as defined in section 394.455 and is therefore not entitled to confidentiality during that proceeding. He maintains his right to assert an appropriate doctor-patient privilege, however. Finding no statute or rule requiring that competency hearings be closed, we now examine case law.
The First Amendment to the United States Constitution preserves for the public and the press access to criminal trials. Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980). Inherent in our system of justice is a presumption of openness.
Florida courts are also committed to open judicial proceedings. In State ex rel. Miami Herald Publishing Company v. McIntosh, 340 So.2d 904 (Fla. 1977), the Florida Supreme Court expressly rejected suppression of news in a criminal trial unless national security or a defendant's right to a fair trial were jeopardized. See Sentinel Star Company v. Booth, 372 So.2d 100 (Fla. 2d DCA 1979); Miami Herald Publishing Company v. State, 363 So.2d 603 (Fla. 4th DCA 1978); News-Press Publishing Company v. State, 345 So.2d 865 (Fla. 2d DCA 1977); Miami Herald Publishing Company v. Collazo, 329 So.2d 333 (Fla. 3d DCA), cert. denied, 342 So.2d 1100 (Fla. 1976); State ex rel. Gore Newspapers Company v. Tyson, 313 So.2d 777 (Fla. 4th DCA 1975), overruled on procedural grounds in English v. McCrary, 348 So.2d 293 (Fla. 4th DCA 1977). Courts recognize, however, that a defendant's right to a fair trial may compete with the public's right to information reported by a free press. State ex rel. Miami Herald Publishing Company v. McIntosh, supra.
In our view, the same reasoning that requires open trials mandates open competency proceedings.[3] In a competency proceeding, *1345 only a defendant's ability to assist counsel is questioned. Statements concerning his guilt, innocence or sanity at the time of the offense are not material because they relate to different issues. It is therefore unlikely that testimony jeopardizing a defendant's right to a fair trial would be elicited. Furthermore, in many criminal cases, pretrial proceedings eliminate the need for a trial, either as a result of dismissal of the charges or by rulings made at the hearing which destroy a party's chances of success at trial. Westchester Rockland Newspapers, Inc. v. Leggett, 48 N.Y.2d 430, 399 N.E.2d 518, 423 N.Y.S.2d 630 (1979). In Westchester, the court noted: "At the present time, in fact in most criminal cases, there are only pretrial proceedings. Thus if the public is routinely excluded from all proceedings prior to trial, most of the work of the criminal courts will be done behind closed doors." 423 N.Y.S.2d at 636, 399 N.E.2d at 523. Competency proceedings may also postpone or terminate the need for trial.
Petitioner urges us to adopt the three-pronged test utilized by other appellate courts in Florida in reviewing a trial court's closure order. Under this test, the public may be denied access to court proceedings and records only if the movant proves that: (1) closure is necessary to prevent a serious and imminent threat to the administration of justice, (2) no less restrictive alternative measure is available, and (3) closure will in fact achieve the court's purpose. Ocala Star Banner Corp. v. Sturgis, 388 So.2d 1367 (Fla. 5th DCA 1980); State ex rel. Pensacola News-Journal, Inc. v. Fleet, 388 So.2d 1106 (Fla. 1st DCA 1980); Miami Herald Publishing Company v. Lewis, 383 So.2d 236 (Fla. 4th DCA 1980); Sentinel Star Co. v. Booth, supra; Miami Herald Publishing Company v. State, supra. Compare Sentinel Star Company v. Edwards, 387 So.2d 367 (Fla. 5th DCA 1980) (limiting the three-pronged test to prior restraint cases). The first prong of the test protects a defendant's right to a fair trial; the second prong employs traditional First Amendment techniques, and the third prong employs practical considerations. Because the test protects competing societal interests in providing fair trials while permitting free access to courts, we adopt its criteria.
Applying the test to the case before us, we observe that the trial court predicated its closure order solely upon its opinion that the Baker Act mandated closure. The court did not consider whether closure was necessary to the administration of justice, whether a less restrictive alternative was available, and whether closure achieved the court's purpose, factors we now adopt as the standards for excluding the public. The competency hearing was conducted in advance of the trial. The court did not, by closing the courtroom insure the fairness of a subsequent trial. Instead its order served only to deter the press and public from exercising basic First Amendment freedoms.
In light of our decision, we find it unnecessary to discuss appellant's remaining points on appeal.
For these reasons, we reverse the trial court's Order of Closure and remand for further proceedings consistent with our holding that pretrial criminal competency proceedings must be open to the press and public unless open proceedings will violate the test criteria.
NOTES
[1] Fla.R.App.P. 9.100(d)(1):

(d) Exception; Orders Excluding Press or Public.
(1) A petition to review an order excluding the press or public from access to any proceeding, any part of a proceeding, or any judicial records, if the proceedings or records are not required by law to be confidential, shall be filed in the court as soon as practicable following rendition of the order to be reviewed, if written, or announcement of the order to be reviewed, if oral. A copy shall be furnished to the person (or chairperson of the collegial administrative agency) issuing the order, and the parties to the proceeding.
[2] Fla.R.Crim.P. 3.210.
[3] The Supreme Court of the United States has held that the United States Constitution does not afford affirmative right of access to a pre-trial suppression proceeding in which all participants have agreed that closure is appropriate to protect a defendant's fair trial rights. Gannett Co. v. DePasquale, 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979). The New York appellate court that decided Gannett distinguished its decision by ruling that a pretrial competency hearing, unlike a suppression hearing, may not be closed on fair trial grounds. Westchester Rockland Newspapers, Inc. v. Leggett, 48 N.Y.2d 430, 399 N.E.2d 518, 423 N.Y.S.2d 630 (1979). We find that a competency hearing, unlike a suppression hearing, may be a complete trial decided on the basis of competence to assist counsel and is therefore subject to different treatment.