434 So.2d 355 (1983)
PALM BEACH NEWSPAPERS, INC., Petitioner,
v.
The Honorable Jack H. COOK, Respondent.
No. 83-330.
District Court of Appeal of Florida, Fourth District.
July 20, 1983.
*356 L. Martin Reeder, Jr., of Steel, Hector, Davis, Burns & Middleton, Palm Beach, for petitioner.
Jim Smith, Atty. Gen., Tallahassee, and Robert L. Bogen, Asst. Atty. Gen., West Palm Beach, for respondent.
GLICKSTEIN, Judge.
This is a petition for review of an order closing a portion of a criminal sentencing and of an order sealing the transcript of the closed portion of the hearing. Even though the hearing to which access was denied has already been held, the matters in dispute are not moot, because they are "capable of repetition, yet evading review." Nebraska Press Association v. Stuart, 427 U.S. 539, 546, 96 S.Ct. 2791, 2797, 49 L.Ed.2d 683, 690 (1976).
Defendant, Robert Roman, was arrested on several drug-related felonies in Broward County and on January 6, 1983, was sentenced in that county to two years in prison. Since he was on probation at the time of arrest from a prior Palm Beach County conviction, he was charged with probation violation there, and pleaded guilty. He appeared for sentence before The Honorable Jack H. Cook on January 12, 1983. At an open hearing Roman's counsel revealed that *357 since his arrest Roman had assisted Broward County law enforcement officers and the Fort Lauderdale office of the Federal Bureau of Investigation. Roman's counsel indicated Roman had been of particular assistance to "Agent Hoffman," a Broward County undercover police officer, who had testified on Roman's behalf at the Broward sentencing hearing. Roman's counsel said he understood that Hoffman was willing to appear and testify in Palm Beach County. Defendant testified that at Agent Hoffman's request defendant had cooperated by arranging contacts with persons involved in gambling and drugs, and that several gambling and cocaine arrests and a number of charges had resulted.
The judge continued the hearing so that Roman might obtain the presence and testimony of Agent Hoffman. The judge offered to entertain a motion to close the hearing at which Hoffman would testify. Roman's attorney filed, and noticed for hearing, such a motion, later that day. The motion alleged no reasons for prohibiting the public and press from access to the sentencing hearing. A copy of the notice was posted on the pressroom door at the courthouse. Petitioner filed a motion to intervene and a memorandum opposing the motion on January 14, 1983.
Hearing on the closure motion and on petitioner's motion to intervene was held before Judge Cook on January 17th. Defendant did not oppose petitioner's motion to intervene or appearance of petitioner's counsel to oppose the closure motion. Motion to intervene was granted. No witnesses appeared for defendant and no evidence was presented in support of the closure motion. Defendant's counsel merely referred to the court's having been informed of defendant's desire for closure at the January 12th hearing, so that witnesses in support of mitigation of defendant's sentence might testify. Defendant's counsel stated the reasons were brought out on January 12th, and facts supporting closure had not been stated in the closure motion "because that has already been discussed with the court at the open hearing on January 12th." Defendant's counsel maintained that defendant's fears for his personal safety had been stated to the court at that prior hearing; that full disclosure would endanger certain ongoing investigations, and that the unnamed witnesses "only want to do it and to share with the court in toto things they can share in camera."
Petitioner's attorney argued that only by means of an evidentiary hearing, at which the three-pronged test of Miami Herald Publishing Co. v. State, 363 So.2d 603 (Fla. 4th DCA 1978), as substantially approved by the Florida Supreme Court in Miami Herald Publishing Co. v. Lewis, 426 So.2d 1 (Fla. 1982), can the First Amendment right of access to criminal proceedings be overcome. Petitioner's attorney maintained the necessary evidence had not been presented, and challenged the mere allusion to evidence and argument purportedly offered at the January 12th hearing. He also questioned the adequacy of the notice of the closure motion hearing, since it contained no supporting facts. The State took no position on the motion.
The trial court granted the closure motion on the grounds that the case meets the Miami Herald v. State criteria. The trial judge announced that the sentencing hearing would go forward that afternoon, the in camera testimonial portion coming first. The public sentencing would follow as would the ruling as to whether the transcript of the in camera proceedings should be sealed.
At the open sentencing the trial judge announced his ruling that the closure was necessary and that the in camera proceedings transcript would be sealed (for an indefinite time) "to prevent serious and imminent threat to the administration of justice and also for the protection of at least one or more individuals who I find are legitimately in fear of serious bodily harm and that no less restrictive alternative measures are available and closure will, in fact, achieve this purpose."
While the presumption in favor of open judicial proceedings is strong, closure is justified in certain circumstances. These *358 include the need to protect defendant's right to fair proceedings, and the state's need to obtain just convictions and to protect confidential information and the identity of informants. Gannett Co. v. De Pasquale, 443 U.S. 368, 398, 99 S.Ct. 2898, 2915, 61 L.Ed.2d 608, 633 (1979), Powell, J., concurring; State v. Newman, 405 So.2d 971 (Fla. 1981). The right of press and public to attend criminal judicial proceedings has been ascribed to the usages of common law, Gannett Co., 443 U.S. at 384, 99 S.Ct. at 2908, 61 L.Ed.2d at 624, and to the constitutional rights guaranteed in the First and Fourteenth Amendments, Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 580, 100 S.Ct. 2814, 2829, 65 L.Ed. 973, 991-92 (1980). When the interests of press and public, on the one hand, and of defendant, the judiciary and the state, on the other, conflict, the court must weigh them against each other to determine whether access of press and public to such a proceeding may be denied.
That sentencing is a part of the criminal trial process of which the public has the right to be informed has been asserted by this court in Miami Herald v. State, 363 So.2d at 605. It stands to reason that this is so, if a significant reason, among others, for public access is to assure that the criminal process satisfy the appearance of justice. See Richmond Newspapers, 448 U.S. at 571-72, 100 S.Ct. at 2824-25, 65 L.Ed.2d at 986.
The Florida Supreme Court has adopted the following three-pronged test for determining whether a pre-trial hearing may be closed:
1. Closure is necessary to prevent a serious and imminent threat to the administration of justice;
2. No alternatives are available, other than change of venue, which would protect a defendant's right to a fair trial; and
3. Closure would be effective in protecting the rights of the accused, without being broader than necessary to accomplish this purpose.
Miami Herald v. Lewis, 426 So.2d at 3. The principles that inhere in this test, if not the exact language, are equally applicable when closing a portion of a sentencing is contemplated. The State Supreme Court's three-pronged test above is a modification of the test adopted by this court for sentencing hearings: "(1) [C]losure is necessary to prevent a serious and imminent threat to the administration of justice, (2) that no less restrictive alternative measures are available, and (3) that closure will in fact achieve the court's purpose." Miami Herald v. State, 363 So.2d at 606. This version seems more appropriate to the present case, in light of the differing circumstances that attend upon sentencing as compared with pre-trial hearings and actual trial proceedings. This court indicated in Miami Herald v. State that a closure order cannot be entered absent a showing that all three parts of the test have been met. Id. If the test is satisfied, the trial court may, for compelling reasons, seal the transcript of a closed hearing, provided the court sets forth the basis for closing the records. Id.; News-Press Publishing Co. v. State, 345 So.2d 865, 867 (Fla. 2d DCA 1977). An example of a valid reason for sealing the record is danger to a person's life. Miami Herald v. State, 363 So.2d at 606.
To determine whether proceedings should be closed, the members of the press, because they have special concern as the persons who gather and disseminate news in the interest of the people's right to know, have a right to reasonable notice and hearing. Miami Herald v. State, 363 So.2d at 606-07; State ex rel. Miami Herald Publishing Co. v. McIntosh, 340 So.2d 904, 910 (Fla. 1977). This hearing may be summary if circumstances warrant. 340 So.2d at 910. Also under McIntosh the press has standing to appeal trial court rulings that inhibit dissemination of news. Id. at 908. See also C.B.S., Inc. v. Young, 522 F.2d 234 (6th Cir.1975); State ex rel. Gore Newspaper Co. v. Tyson, 313 So.2d 777 (Fla. 4th DCA 1975), overruled in English v. McCrary, 348 So.2d 293 (Fla. 1977).
*359 When closure is sought the news media, as surrogate for the public, are entitled to notice of the hearing and opportunity to be heard on the question of closure prior to the court's decision. Miami Herald v. Lewis, 426 So.2d at 7.
At the hearing, those who seek closure should first provide an adequate basis to support a finding that closure is necessary to prevent a serious and imminent threat to the administration of justice.... In determining this question, an evidentiary hearing should be held and findings of fact should be recorded by the judge in his order granting or refusing closure.
Id. at 7-8. In addition, those seeking closure must show that no less restrictive alternative measures will accomplish the end, and that closure will be effective in protecting against the perceived harm. Id. at 8. If a less restrictive alternative is available and its use will not unduly burden expeditious conclusion of the case, the alternative should be chosen. Id.
This court appreciates that the closure hearing requirements enounced in Miami Herald v. Lewis can thrust the trial court and those seeking closure, whether defendant, prosecutor or both, into a veritable mine field. For example, to make a showing that closure is necessary to protect a person or persons from deadly harm, or to protect an ongoing investigation from disclosure, without revealing that which one is seeking to conceal, may require consummate expressive skills rarely found in mortals. Accordingly, we must conduct our reviews on a common sense basis, case by case, giving sincere deference to the goal of open proceedings very properly endorsed in Miami Herald v. Lewis, while refusing to be reckless of equally fundamental concerns that the circumstances of individual cases may raise.
We conclude by holding that the notice and hearing on the motion to prohibit public access was procedurally defective. The notice of closure hearing to be given the press should apprise them of the reason for the hearing. The hearing itself is meaningless unless it is an evidentiary hearing, wherein the moving party adduces evidence to demonstrate that there are real, substantial reasons for excluding the public from the hearing. In a situation such as we are presented with here, where the defendant seeks to mitigate his sentence by demonstrating his good faith efforts to cooperate with law enforcement, for an evidentiary hearing to meet the standards required by this procedure, the defendant as the moving party should present testimony that demonstrates that for a certain period of time he has worked with specific law enforcement people ferreting out crime, that in pursuance thereof he has set up a certain number of transactions with drug dealers, which have resulted in criminal prosecutions being instituted. No names, dates, or places need be given so that the specific cases will not be divulged. The law enforcement personnel who have dealt with the defendant or others who are familiar with the facts should corroborate the defendant's testimony, once again without identifying people, places, or things specifically. In addition, the witnesses should point out, where possible, how public knowledge of the details of the defendant's activities could jeopardize the lives of the defendant or other witnesses and/or destroy the secrecy of ongoing criminal investigations. Finally, testimony should be presented, if it be the case, that certain of the witnesses refuse to testify unless the matter be held in camera because they fear for their own safety should the matter be made public. Cross examination of these witnesses by the press must, of necessity, be kept within these same restrictive bounds so as to assure that unwarranted disclosure will not result. At the conclusion of such a hearing the trial court, with the assistance of counsel's argument, should be in a position to determine whether closure of the sentencing hearing is required or whether other alternatives are available.
In any event review of the transcript of the closed proceeding supports the trial court's determination of the existence of grounds for closure  protection of a person *360 or persons from grave risk of harm, and an ongoing criminal investigation from premature termination. Accordingly, the record should remain sealed, as the trial court said. That being the case, we do not believe there is anything to be accomplished by remanding the matter to the trial court to hold an after the fact evidentiary hearing.
DOWNEY and ANSTEAD, JJ., concur.